IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MICHELLE COCHRAN,<br><br>                      Plaintiff<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION, JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, and MATTHEW G. WHITAKER, in his official capacity as Acting United States Attorney General,<br><br>                      Defendants. | CIVIL ACTION NO: |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Michelle Cochran, brings this complaint for declaratory and injunctive relief, alleging as follows:

### PRELIMINARY STATEMENT

1.     This action arises from the SEC's attempt to subject plaintiff Michelle Cochran to an administrative proceeding that violates Article II of the United States Constitution and the due process clause of the Fifth Amendment.

2.     On June 21, 2018, the U.S. Supreme Court held in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), that the SEC had been appointing its administrative law judges in violation of the Appointments Clause of Article II. The Supreme Court not only nullified the proceeding against the petitioner, Raymond Lucia, it ordered the SEC to reassign his matter to a new, properly appointed ALJ. In an effort to cure the constitutional defect, the SEC attempted to "ratify" the

appointment of all of its ALJs on August 22, 2018 and followed with an order reassigning all pending enforcement proceedings to new ALJs.

3.      Michelle Cochran was the subject of one such enforcement proceeding. An accountant, Ms. Cochran was named as a respondent in an administrative proceeding the SEC brought in April 2016 against her former employer, The Hall Group CPAs, and its founder, David Hall. Among other things, the SEC alleged that the firm violated various accounting standards in several audits it performed. While Hall was named as the primary violator, Ms. Cochran's alleged liability was premised on her participation in some of the allegedly deficient audits as Hall's employee.

4.      On October 24, 2016, the day of the hearing in the administrative proceeding, Hall and his firm settled with the SEC. He agreed to a $25,000 fine and a permanent ban from practicing as an accountant before the SEC. Hall then testified for the SEC. Ms. Cochran defended herself pro se in the hearing. The ALJ ultimately sided with the SEC, fining Ms. Cochran $22,500 and banning her from practicing before the SEC as an accountant for at least five years.

5.      The SEC is now attempting to retry Ms. Cochran in a reinstituted enforcement proceeding based on the same Order Instituting Proceedings it filed against her in 2016. Although the SEC appointed a new ALJ in her matter after *Lucia*, the SEC is still violating the Constitution in at least two ways.

6.      The first was discussed by Justice Breyer in his concurrence in *Lucia*. In violation of the President's removal power, SEC ALJs may only be removed for good cause as determined by the Merit Systems Protection Board (MSPB), whose members themselves can only be removed by the President for good cause. SEC Commissioners, who have powers of appointment

2

over ALJs, cannot act without approval from MSPB and themselves enjoy for-cause protection against removal. By insulating SEC ALJs from control by the President, these multiple layers of tenure protection violate Article II of the United States Constitution.

7.     The second is a violation of Ms. Cochran's right to due process under law. Simply put, the SEC consistently ignores its own rules, deadlines and procedures. This violation is especially prejudicial in the reinstituted proceeding against Ms. Cochran, which will end up being heard at least five years after the pertinent events took place.

8.     The SEC could have brought its original proceeding against Ms. Cochran in a federal district court or in an administrative proceeding before the Commission. Instead, it chose to bring that action before an unconstitutionally-appointed ALJ. It should not be permitted to force Ms. Cochran to litigate before yet another unconstitutionally-appointed ALJ before she can assert her valid constitutional claims in an Article III court.

9.     Administrative agencies such as the SEC are neither equipped nor authorized to hear and decide constitutional questions. Instead, "[i]t is emphatically the province and duty of the judicial department to say what the law is"—including, most especially, in constitutional cases. *Marbury v. Madison*, 5 U.S. (1 Cr.) 137, 177 (1803). For Ms. Cochran's constitutional claims to be adjudicated in a just and constitutional manner, she must be permitted to assert them in an Article III court.

## PARTIES

10.     Plaintiff Michelle Cochran is a resident of Coppell, Texas.

11.     Defendant United States Securities and Exchange Commission is an independent agency of the United States government headquartered in Washington, DC. Ms. Cochran's

original proceeding was prosecuted by the SEC's regional office in Fort Worth, Texas, and her current proceeding is being prosecuted by the same regional office.

12.     Defendant Jay Clayton is the Chairman of the United States Securities and Exchange Commission. He is sued in his official capacity.

13.     Defendant Matthew G. Whitaker is the acting Attorney General of the United States, and the head and principal officer of the United States Department of Justice. He is sued in his official capacity.

JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331,  1346, 1651, 2201 and 5 U.S.C. §§ 702 and 706.

15.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (e) because Ms. Cochran resides in this judicial district and a substantial part of the events or omissions giving rise to her claims occurred in this judicial district.

FACTUAL BACKGROUND

16.      Michelle Cochran is a CPA licensed in Texas. In 2007, after being out of the work force for some time, Ms. Cochran went to work for The Hall Group CPAs, a small auditing firm founded by David Hall.

17.     The Hall Group CPAs did auditing work, mostly for nonprofits and privately held companies, but it also handled audits for a few, small, publicly traded companies. At the time, firm was a registered public accounting firm under the Securities and Exchange Act of 1934 (the "Exchange Act") and the rules of the Public Company Accounting Oversight Board. (PCAOB).

18.     Ms. Cochran began with The Hall Group as a part-time hourly contractor, working ten to fifteen hours per week as an auditor. She gradually increased her hours, and by

4

2012, she was working approximately thirty-five hours per week.[1]

19.     The work atmosphere at The Hall Group was stressful and unpleasant. Hall often yelled at and belittled his employees, including Cochran. Often unhappy with the number of hours incurred on an engagement, Hall sometimes took files away from employees before they could complete all the paperwork. Compounding this problem, Hall often took on more work than the small staff could complete on time. Some employees quit with little or no advance notice.

20.     Ms. Cochran clashed with Hall often. Among other reasons, Hall pressured Ms. Cochran to become a non-equity partner in firm. Hall needed an additional partner for two reasons. First, he needed to satisfy the Texas accounting board, which had opposed his use of the firm name "The Hall Group CPAs" because Hall was the only partner. Second, in order to conduct audits of public companies, Hall needed to comply with section 10(j) of the Exchange Act, which prohibits auditors from overseeing more than five annual audits of any one company in a row. By making Ms. Cochran a partner, Hall could assign audits he could not perform to her.

21.     Ms. Cochran did not want to become a partner, however, as she was only a part-time employee and was uncomfortable with the potential liability that partnership might entail. Hall continued to press the issue, and ultimately made becoming a partner conditional on her continued employment at the firm.

22.     Eventually, Ms. Cochran relented. In February 2012, Hall made Ms. Cochran a non-equity partner in the firm. The position entailed no increase in pay, and Ms. Cochran's

---

[1] The SEC's documents refer to Ms. Cochran as "Michelle Helterbran Cochran." She has since dropped "Helterbran" from her name.

compensation continued to be based on the number of hours she worked each week. Hall remained the only equity partner and 100% owner of the firm.

23.     In May 2013, Ms. Cochran resigned from The Hall Group. Her last day was July 1, 2013.

**The SEC's Charges Against The Hall Group**

24.     On April 26, 2016, the Public Company Accounting Oversight Board ("PCAOB") issued an order censuring David Hall and The Hall Group for violations of PCAOB accounting standards with respect to several annual audits and quarterly reviews. The order fined the firm $10,000 and revoked its PCAOB registration. It also censured David Hall and barred him from "being an associated person of a registered public accounting firm" for at least three years. These penalties were based on his own actions and his role in directing others in his firm. PCAOB Release No. 105-2016-015, at 1 (April 26, 2016).

25.     On the same day, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings (OIP) against David Hall and The Hall Group, but unlike PCAOB, the SEC also named Michelle Cochran and Susan A. Cisneros, another accountant who had worked as a contractor at the firm, as respondents. (Collectively, "the Hall Respondents"). The SEC alleged various violations of the Exchange Act, most of which resulted from the Hall Respondents' alleged failure to comply with PCAOB auditing standards with respect to a number of quarterly reviews and annual audits the firm had conducted for several public companies between 2010 and 2013. Exchange Act Release No. 77718 (April 26, 2016).

26.     More specifically, the SEC alleged that (a) the Hall Respondents had failed adequately to document several audits and/or reviews; (b) that they had failed to obtain proper "engagement quality reviews" for several audits and reviews; (c) that, as a result of these alleged

violations, they had filed audit reports falsely stating that the aforementioned audits and reviews were conducted according to PCAOB standards; (d) that David Hall improperly participated in audits of some companies after having acted as the lead audit partner for the same companies in each of the previous five years, and (e) that Hall had directed audits of a company that employed Hall as its CFO, even though he had a direct financial interest and business relationship with both the auditor and the company under review.

27.     Many of the allegations against the Hall Respondents had nothing to do with Ms. Cochran and involved conduct that occurred either before she had become a nonequity partner in the firm or after she had left the firm. The allegations that did implicate Ms. Cochran in allegedly deficient audits fell only into the first three categories, above. Her liability for these alleged violations was premised on the fact that she had been designated as the engagement partner on several of the allegedly deficient audits and had therefore allegedly "aided and abetted" The Hall Group's violations.

**The SEC's Enforcement Proceedings Against The Hall Group**

28.     Under the Exchange Act, the SEC had the option of bringing its enforcement proceedings against the Hall Respondents either in federal district court or in an administrative proceeding. 15 U.S.C. §§ 78d-1(a), 78u(d). It elected to institute proceedings against the Hall Respondents before an unconstitutionally-appointed administrative law judge, Cameron Elliot—the same ALJ whose appointment the Supreme Court later held unconstitutional in *Lucia v. SEC*.

29.     Indeed, when the SEC filed its Order Instituting Proceedings against the Hall Respondents on April 26, 2016, it was already defending the appointment of its ALJ's before the D.C. Circuit Court of Appeals in *Lucia v. SEC*, 832 F.3d 277 (2016) (holding appointment of ALJ constitutional), and the Tenth Circuit in *Bandimere v. SEC*, 844 F.3d 1168 (2016) (holding

appointment of ALJ unconstitutional). Hence, the agency was already on notice of the potentially unconstitutional status of its ALJs but chose to proceed before them anyway.

30.     When the SEC filed its OIP against the Hall Respondents, ALJ Elliot had not been appointed by the Commission. Instead, he and the other SEC ALJs were appointed by the Chief ALJ, not by a constitutionally authorized officeholder.

31.     ALJ Elliot was reported at the time to have "found the defendants liable in every contested case he has heard" and to have said to defendants during settlement discussions that "they should be aware he had never ruled against the agency's enforcement division." *See* Jean Eaglesham, *Fairness of SEC Judges Is in Spotlight*, Wall St. J. (Nov. 22, 2015).

32.     In the April 26, 2016 OIP against the Hall Respondents, the Commission ordered, pursuant to Rule 360(a)(2) of the SEC's Rules of Practice, that a hearing "shall be convened not earlier than 30 days and not later than 60 days from service of this Order" before an ALJ and that the ALJ "shall issue an initial decision no later than 300 days from the date of service of this Order." Exchange Act Release No. 77718 at 10-11 (April 26, 2016).

33.     Ms. Cochran was served with the OIP on May 2, 2016.

34.     On May 19, 2016, ALJ Elliot issued an order postponing the mandatory hearing indefinitely. In the order, ALJ Elliot wrote, "Unless Respondents indicate otherwise, I construe their consent to the hearing date's postponement as a waiver of their right to a hearing within thirty to sixty days of service of the OIP," as directed by 15 U.S.C. § 78u-3(b). *Order Postponing Hearing and Scheduling Prehearing Conference*, Administrative Release No. 3853 (May 19, 2016).

35.     At a pretrial conference on May 25, 2016, ALJ Elliot informed Ms. Cochran and the other Hall Respondents that SEC rules required that he hold a hearing by September 11,

2016, even though that was more than 130 days after service of the OIP. He then suggested that the hearing be held on October 24, 2016, which was 175 days after service of the OIP. ALJ Elliot did not discuss the 60-day statutory deadline with Ms. Cochran. Based on ALJ Elliot's representations, she agreed to the October date for a hearing.

36.     On October 24, 2016, the day of the hearing, David Hall settled the charges against him and his firm. While neither admitting nor denying the allegations against them, Hall and his firm agreed to a permanent ban from practicing as accountants before the SEC and a $25,000 fine. Hall's liability was premised not only on directing Ms. Cochran and Susan Cisneros to conduct allegedly inadequate audits between 2010 and 2013, but also on inadequate audits that Hall conducted, both before Ms. Cochran became a nonequity partner in the firm and after she left the firm. *Order Making Findings and Imposing Remedial Sanctions*, Exchange Act Release No. 79147 (Oct. 24, 2016).

37.     Hall's liability was also premised on a transaction that occurred after Ms. Cochran left The Hall Group. In 2014, Hall sold his auditing practice to a firm called Thakkar CPA. As part of the deal, Hall accepted a promissory note from Thakkar CPA for $313,516. Hall also helped Thakkar CPA obtain business from his former audit clients. One, DynaResources, Inc., engaged Thakkar CPA as its auditor after hiring Hall as its CFO. As a result, Hall as CFO of DynaResources, Inc. had allowed Thakkar CPA to conduct audits for the company while Hall had a financial interest in the auditor. This conflict of interest constituted a violation of PCAOB standards by Thakkar CPA and a violation of the Exchange Act by Hall and DynaResources, Inc.

38.     Also on October 24, 2016, ALJ Elliot began a two-day hearing on the charges against Ms. Cochran and Ms. Cisneros. Both appeared, *pro se*. Hall testified for the SEC.

39.     At the time, not only had ALJ Elliot not been constitutionally appointed by the SEC to act as a hearing officer, but ALJ Elliot also enjoyed multiple layers of protection from removal as an ALJ.

40.     Ms. Cochran opposed the SEC's claims against her. Among other things, she pointed out that no audits on which she worked ever had to be restated, and that no clients or shareholders ever complained or alleged any harm resulting from any audits she performed. Additionally, the relevant audits occurred at least three years prior to the hearing (sometimes longer), and once Ms. Cochran left The Hall Group, she had no control over the audit files and thus no way to verify that the files Hall had produced to the SEC were complete.

41.     ALJ Elliot issued his Initial Decision on March 7, 2017. He held for the SEC on nearly all of its claims against Ms. Cochran, fining her $22,500 and banning her from practicing as an accountant before the SEC, but allowing her to reapply for permission to practice after five years. ALJ Elliot also banned Ms. Cisneros from practicing before the SEC as an accountant and fined her $10,000. *Initial Decision as to Michelle L. Helterbran Cochran, CPA, and Susan Cisneros*, Initial Decision Release No. 1114 (March 7, 2017).

42.     The SEC issued a notice adopting ALJ Elliot's Initial Decision as final on June 15, 2017. *Notice*, Exchange Act Release No. 80949 (June 15, 2017). However, on July 25, 2017, Ms. Cochran objected to the SEC's order on the ground that she had not been properly served with the Initial Decision and thus had not been afforded the opportunity to seek review from the Commission. The Commission ordered briefing on the issue on August 8, 2017. Shortly thereafter, however, events in connection with *Lucia v. SEC* in the Supreme Court affected further proceedings in Ms. Cochran's case, and ultimately led to an order from the Commission vacating ALJ Elliot's decision in her case and ordering new proceedings before a different ALJ.

**The *Lucia* Case and the SEC's Reassignment of ALJs**

43.     On July 21, 2017, Raymond Lucia filed a petition for certiorari in the U.S. Supreme Court. An investment professional, Lucia had been charged with securities fraud by the SEC in 2012. He fought the SEC's charges before ALJ Cameron Elliot, appealed ALJ Elliot's adverse decision to the full Commission, and then appealed the Commission's adverse decision to the D.C. Circuit. Among other things, Lucia argued that the ALJ's appointment violated the Constitution's Appointment Clause of Article II. A three-judge panel ruled against Lucia, and the full D.C. Circuit sitting *en banc* evenly split, resulting in a win for the SEC and prompting Lucia's appeal to the Supreme Court.

44.     On November 29, 2017, the United States Solicitor General filed its response to Lucia's petition on behalf of the SEC. The Solicitor General *agreed* with Lucia that ALJ Elliot's appointment was unconstitutional. The next day, the SEC issued an order announcing its effort to "put to rest" any claim that its ALJs were not constitutionally appointed by ratifying the agency's "prior appointment of" all SEC ALJs. *Order*, Securities Act of 1933 Release No. 10440 (Nov. 30, 2017).

45.     In the same order, the Commission remanded Ms. Cochran's case back to ALJ Elliot with instructions to consider whether he should ratify his prior decision in her case.

46.     On January 26, 2018, ALJ Elliot ratified his earlier decision, over Ms. Cochran's objection. Administrative Proceedings Rulings, Release No. 5544 (Jan. 26, 2018). Ms. Cochran then petitioned the Commission for review on February 18, 2018.

47.     On June 21, 2018, the United States Supreme Court issued its decision in *Lucia v. SEC*. The Court held that, under its earlier decision in *Freytag v. Commissioner*, 501 U.S. 868 (1991), SEC ALJs were "Officers of the United States" within the meaning of the Appointments

Clause, and therefore had to be appointed by the President or the Head of a Department. *Lucia*, 138 S. Ct. at 2055. Because SEC ALJs were not so appointed, the Court vacated all prior proceedings in Lucia's case and directed the SEC to hold a new hearing before a different, properly appointed ALJ. *Id*.

48.     In footnote 6 of the *Lucia* opinion, the Court explained that it was declining to address the fully-briefed question of whether the November 30, 2017 ratification was effective, because "The Commission has not suggested that it intends to assign Lucia's case on remand to an ALJ whose claim to authority rests on the ratification order. The SEC may decide to conduct Lucia's rehearing itself. Or it may assign the hearing to an ALJ who has received a constitutional appointment independent of the ratification." *Id*. at 2055 n. 6.

49.     On August 22, 2018, the Commission ordered that Ms. Cochran, along with all other respondents in pending matters, "be provided with the opportunity for a new hearing before an ALJ who did not previously participate in the matter," and "vacate[d] any prior opinions" issued in her matter. *Order*, Exchange Act Release No. 83907, at 1 (Aug. 22, 2018).

50.     In that same order, the SEC again attempted to ratify the appointments of all ALJs who were appointed unconstitutionally, stating, "On November 30, 2017, we ratified the appointments of Chief Administrative Law Judge Brenda Murray and Administrative Law Judges Carol Fox Foelak, Cameron Elliot, James E. Grimes, and Jason S. Patil to the office of administrative law judge in the Securities and Exchange Commission. In an abundance of caution and for avoidance of doubt, we today reiterate our approval of their appointments as our own under the Constitution." *Id*.

51.     On September 12, 2018, Chief Administrative Law Judge Brenda P. Murray assigned Ms. Cochran's matter to Administrative Law Judge Carol Fox Foelak and ordered that

by no later than October 3, 2018, ALJ Foelak issue an order directing the parties to submit proposals for the conduct of further proceedings. *Chief Administrative Law Judge's Order Assigning Proceedings Post* Lucia v. SEC, Administrative Proceedings Rulings, Release No. 5955 (September 12, 2018).

52.     In a document issued by the USDOJ entitled "Guidance on Administrative Law Judges after *Lucia v. SEC* (S. Ct.)," the Solicitor General suggested, "Additionally, it would be fitting for the ratifications to be accompanied by an appropriate degree of public ceremony and formality. … for example, a Department Head might re-administer the oath of office to incumbent ALJs in a public ceremony, or on record of a regular public hearing or meeting. These steps … [though not strictly necessary] will underscore that the Department Head has satisfied the purposes of the Appointments Clause by accepting public responsibility for the appointment of specific persons to the office of ALJ."

53.     On September 28, 2018, the Commission responded to a Freedom of Information Act request about the steps it had taken to appoint its ALJs properly. Although the SEC has identified 89 pages of records responsive to that request, it decided to "withhold these records in their entirety" under various exemptions, including work product/anticipation of litigation. Hence, it is not publicly known whether the SEC complied with the USDOJ's directive.

**The Administrative Scheme and the Removal Power**

54.     The SEC may bring actions in federal district court or it may elect to seek civil penalties in administrative proceedings against an entity it finds "is violating or has violated any provision of [the Exchange Act], or any rule or regulations issued under [the Exchange Act]," 15 U.S.C. §§ 78d-1(a), 78u(d).

55.     The SEC's jurisdiction pursuant to the Exchange Act is limited to consideration of whether conduct violated the Securities laws—and that topic alone. *See* 15 U.S.C. §§ 78u(a)(1) ("Authority and discretion of Commission to investigate violations" of the Exchange Act).

56.     The administrative process departs from federal court process in many ways. Among others, respondents are denied their rights to trial by jury and they have far more limited discovery and depositions. The protections afforded by the Federal Rules of Civil Procedure and the Federal Rules of Evidence are not available, meaning that ALJs have virtually unfettered discretion over what witnesses and evidence will be allowed, and may admit hearsay and curtail testimony and exhibits. Most importantly, administrative proceedings are investigated, prosecuted and judged by agency employees who are beholden to the entity that has brought the charges. By contrast, in federal court, the judge is independent, unbiased and not beholden to the prosecuting agency.

57.     All SEC ALJs have multiple levels of protection against removal. Specifically, they can be removed only if the Merit Systems Protection Board (MSPB) finds good cause to remove them, 5 U.S.C. § 7521(a), and the members of that board can be removed only for good cause. 5 U.S.C. § 1202(d). SEC Commissioners, who have powers of appointment over ALJs, cannot act to remove them without approval from the MSPB, 5 U.S.C. § 7521, and the Commissioners themselves enjoy for-cause protection against removal.

58.     This scheme violates Article II of the Constitution.

**The SEC's Disregard of Its Own Rules and Deadlines**

59.     SEC administrative enforcement proceedings are governed by statutes set forth in 15 U.S.C. § 78u-3(b). These statutes require that the Commission's order instituting administrative proceedings "shall fix a hearing date not earlier than 30 days nor later than 60

days after service" of the OIP "unless an earlier or later date is set by the Commission with the consent of any respondent so served."

60.     Ms. Cochran did not knowingly or intelligently waive this mandatory date for commencement of her proceedings.

61.     SEC Rules reinforce this strict deadline to hold the hearing and also require that the ALJ issue an initial decision no later than 300 days from the service of the OIP. Rule 360(a)(2), SEC Rules of Practice, 17 C.F.R. § 201.360(a)(2).

62.     The Commission had to commence its hearing within 60 days from the issuance of the OIP. This 60-day deadline was statutorily required. 15 U.S.C. § 78u-3(b). It was also required by the Commission's rules of practice. 17 C.F.R. § 201.360(a)(2)(ii). And a properly-appointed ALJ was required to issue a decision no later than 120 days after the hearing. 17 C.F.R. § 201.360(a)(2)(i). All of these deadlines have passed.

63.     Indeed, in its order of August 22, 2018 reassigning Ms. Cochran's matter to a new ALJ, the Commission said all deadlines in Ms. Cochran's proceeding "are hereby vacated and superseded by the procedures and deadlines set forth in this order." The Commission then ordered the new ALJ in Ms. Cochran's proceeding to "compute the deadlines for scheduling a hearing and issuing an initial decision as specified in amended Rule of Practice 360(a)(2) from the date the proceeding is assigned to a hearing officer pursuant to this order, rather than the date of service of the relevant order instituting proceedings." The Commission also said that all proceedings that had been instituted under the former timing rules in Rule 360, "shall be deemed proceedings" under the amended rules, and it asserted that the "supersed[ing]" rules for deadlines outlined in the Order "confer no procedural or substantive rights on any party," and could be

"modif[ied]" by the ALJ on her own initiative, notwithstanding any contrary provision in the Rules of Practice.

64.    The Commission did not set a deadline for either the new hearing to be held, or for the newly-assigned ALJ to issue an opinion. Instead, the Commission directed the ALJs to request "proposals" from the parties "for the conduct of further proceedings."

65.    On October 2, 2018, ALJ Foelak ordered plaintiff and the SEC Division of Enforcement to submit "a joint proposal for the conduct of further proceedings by November 23, 2018." On November 15, 2018, ALJ Foelak stayed that order for 15 days by agreement of the parties. Ms. Cochran retained the undersigned counsel on December 12, 2018 and filed an agreed motion to extend the deadline to file the joint proposal until January 3, 2019. On January 3, 2019, Ms. Cochran, through counsel, filed a motion to dismiss the enforcement action against her. On January 4, 2019, the SEC filed an unopposed motion to stay the proceedings due to the government shutdown.

66.    SEC enforcement actions give the Commission power to impose monetary penalties of up to $100,000 on Ms. Cochran for *each* alleged violation of the Exchange Act. 15 U.S.C. §§ 78u(d)(3)(B)(i)-(ii). These punitive sanctions are separate from, and in addition to, disgorgement of funds. *See* 15 U.S.C. § 78u-2.

67.    The Commission's ability to ban Ms. Cochran from practicing as an accountant before the SEC implicates both First Amendment associational rights and property rights to engage in her chosen profession.

68.    Deprivations in administrative proceedings such as these can often be more significant than even criminal sanctions. As Justice Gorsuch recently wrote,

> Ours is a world filled with more and more civil laws bearing more and more extravagant punishments. Today's "civil" penalties include confiscatory rather

than compensatory fines, forfeiture provisions that allow homes to be taken, remedies that strip persons of their professional licenses and livelihoods, and the power to commit persons against their will indefinitely. Some of these penalties are routinely imposed and are routinely graver than those associated with misdemeanor crimes—and often harsher than the punishment for felonies.

*Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring).

69.     Echoing these concerns, SEC Commissioner Hester Peirce noted in a recent speech: "Punishing every small violation… means casting discretion aside in favor of making the SEC look tough. Violations are not all equally serious. I agree with Commissioner Michael Piwowar, who notes: 'If every rule is a priority, then no rule is a priority.'" … While following the 'broken windows' approach, perhaps the SEC should have changed its name to the 'Sanctions' and Exchange Commission, because it acted like a branch of the U.S. Attorney's Office for the Southern District of New York." Hester M. Peirce, *The Why Behind the No*, Remarks at the 50th Annual Rocky Mountain Securities Conference, May 11, 2018.

70.     She further expressed concern with "rulemaking by enforcement." "Due process starts with telling individuals in advance what actions constitute violations of the law. … It is wrong to try to do an end run around the APA by using the enforcement process to make policy. Instead, the Enforcement Division only should bring actions based on established legal obligations." *Id.*

71.     Commissioner Peirce also observed: "The effects of an investigation or proceeding on a private party can be devastating. … For the individual under investigation, professional careers, reputations, and personal relationships can suffer. As the SEC's canons of ethics put it: 'The power to investigate carries with it the power to defame and destroy.' This price is too high for violations that are minor." *Id.*

72.     The Commission as a whole encompasses both the enforcement entity that investigates and prosecutes alleged violations and the Office of Administrative Law Judges. *See*

17 C.F.R. §§ 200.14 (Office of Administrative Law Judges), 200.19b (Director of the Division of Enforcement). Moreover, the Commission has the final say within the administrative proceeding concerning liability. 17 C.F.R. § 201.411.

73.     On information and belief, the SEC enjoys a 90% success rate in its own hearings but has only a 69% success rate "against defendants in federal court." Jean Eaglesham, *SEC Wins with in-House Judges*, Wall St. J. (May 6, 2015). Moreover, the Commission has decided appeals from initial decisions "in their own agency's favor" 95% of the time between October 2010 and March 2015. *Id*. Likewise, *The New York Times* reported similar statistics reflecting a higher win percentage in SEC administrative hearings than in federal court. Gretchen Morgenson, *At the SEC, a Question of Home-Court Edge*, N.Y. Times (Oct. 5, 2013).

74.     These structural biases factually and statistically play out in favor of the SEC and the imposition of liability. Ms. Cochran has already endured an extended administrative hearing in front of an ALJ beholden to the same entity that employs him, promulgates, interprets and/or ignores its own rules. Further its enforcement division is prosecuting Ms. Cochran. The Commission routinely accepts the ALJ decision as its own, and to the extent it hears the appeal, it relies heavily on its ALJ's findings of fact and conclusions of law.

75.     Indeed, any facts found by the ALJ, and adopted by the Commission, are deemed "conclusive" so long as they are premised on "substantial evidence." *Steadman v. SEC*, 450 U.S. 91, 97 n. 12 (1981).

76.     The SEC orders set forth above violate their own rules, procedures and deadlines and thus deprive Ms. Cochran of her rights to due process under law. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

77.     Declaratory and injunctive relief is necessary to prevent Ms. Cochran from being compelled to submit—yet again—to an unconstitutional proceeding and from suffering further irreparable professional, reputational and financial harm, all without meaningful judicial review.

78.     If these unlawful administrative proceedings result in adverse findings against Ms. Cochran, the ALJ's and/or Commission's findings would be given substantial deference, entrenching the harm caused by the SEC's unconstitutional proceedings.

79.     Without the requested declaratory and injunctive relief, Ms. Cochran will suffer irreparable harm by being forced to undergo—for the second time—an expensive, time-consuming, reputation-destroying, unconstitutional proceeding. Judicial review after that unconstitutional proceeding cannot and does not provide meaningful relief for the constitutional violations at issue in this matter.

## CAUSES OF ACTION

### COUNT ONE
**(Application for Injunctive Relief)**
**(The Administrative Proceedings Violate Article II of the United States Constitution)**

80.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs above, as if fully set forth herein.

81.     SEC ALJs are "Officers of the United States" who may only be removed for good cause as determined by the Merit Systems Protection Board (MSPB), 5 U.S.C. § 7521(a), whose members themselves can only be removed by the President for good cause. 5 U.S.C. § 1202(d). SEC Commissioners, who have powers of appointment over ALJs, cannot act without approval from MSPB and themselves enjoy for-cause protection against removal. *MFS Sec. Corp. v. SEC*, 380 F. 3d 611, 619-20 (2d Cir. 2004).

82.     These multiple layers of tenure protection violate Article II of the United States Constitution.

83.     Without injunctive relief from this Court, Plaintiff will be required to submit to an unconstitutional proceeding. This in and of itself constitutes irreparable harm to plaintiff unless the SEC's re-instituted administrative proceeding is enjoined.

84.     Furthermore, if the SEC, upon recommendation from the ALJ, finds against Plaintiff, the harm will be severe and irremediable. Ms. Cochran has already been barred from practicing as an accountant before the Commission for almost a year and a half, she has suffered irreparable professional and reputational damage, and incurred time and expense in defending herself. Ms. Cochran is unable under the SEC's administrative adjudication scheme to obtain meaningful judicial review in time to prevent further damage to herself. Nor can this harm be remedied with after-the-fact money damages, as these are irreversible and non-compensable losses.

85.     Plaintiff has a substantial likelihood of success on the merits of her claims. The harm to Plaintiff far outweighs any harm, or even inconvenience, to the SEC, if such relief is granted. Plaintiff has filed this action as early in the proceedings as possible, before any substantial government resources or time has been expended on the re-prosecution of the administrative proceeding. Finally, the grant of an injunction will serve the public interest by protecting Americans' constitutional rights.

## COUNT TWO
### (Declaratory and Injunctive Relief)
### (The Administrative Proceedings Violate Article II of the United States Constitution)

86.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs above, as if fully set forth herein.

87.     SEC ALJs may only be removed for good cause as determined by the MSPB, 5 U.S.C. § 7521(a), whose members themselves can only be removed by the President for good cause. 5 U.S.C. § 1202(d). SEC Commissioners, who have powers of appointment over ALJs, cannot act without approval from MSPB and are themselves protected by for-cause protection against removal. *MFS Sec. Corp. v. SEC*, 380 F. 3d 611, 619-20 (2d Cir. 2004).

88.     These multiple layers of tenure protection violate Article II of the United States Constitution.

**COUNT THREE**
**(Declaratory Judgment)**
**(The SEC's Reinstituted Administrative Proceedings Violate Constitutionally Required Deadlines)**

89.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs above, as if fully set forth herein.

90.     The SEC's reinstituted administrative proceeding violates its own rules of practice and mandatory deadlines. If an agency disregards rules governing its behavior, this deprives an affected entity of the constitutionally guaranteed "due process." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). These principles, often referred to generally as the "*Accardi* doctrine," are so fundamental that an agency's disregard of rules that "afford greater procedural protections" upon parties will void agency action even without a showing of prejudice. *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959).

91.     The Commission had to commence its hearing within 60 days from the issuance of the OIP. This 60-day deadline was statutorily required. 15 U.S.C. § 78u-3(b). It was also required by the Commission's rules of practice. 17 C.F.R. § 201.360(a)(2)(ii). And a properly-appointed ALJ was required to issue a decision no later than 120 days after the hearing. 17

C.F.R. § 201.360(a)(2)(i). Under the *Accardi* doctrine, due process therefore requires adherence to these deadlines.

92.     But today, more than two years after the OIP was issued, there has never been a proper hearing before an administrative law judge, and there has been no proper decision on the merits. The OIP is, in essence, expired. This voids the SEC's action against Ms. Cochran regardless of any prejudice to her. *See Vitarelli*, 359 U.S. at 539.

93.     However, the prejudice to Ms. Cochran is manifest. The events that gave rise to the SEC's enforcement proceeding took place no less than five years ago and for some events longer than that, meaning memories will have faded, some relevant witnesses may be unavailable to testify, and documents necessary for Ms. Cochran to present her defense may be unavailable. As a result, Ms. Cochran is undeniably hampered in presenting her defense.

94.     Although the SEC could have brought an action against Plaintiff either in a federal district court or before the Commission, it chose to bring the action before an unconstitutionally unappointed ALJ. When it brought this action, the SEC was aware of potential constitutional problems with its ALJs—problems so significant that the Department of Justice took the extraordinary step of confessing error before the Supreme Court. Having clung to its erroneous position that the ALJ was properly appointed, the SEC must live with the consequences of its choice to bring this action before an improperly installed ALJ.

95.     *Accardi* requires that the Commission follow its own rules, and having elected an unconstitutional proceeding, it may not now maintain a new proceeding under the expired OIP.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment:

Declaring unconstitutional the statutes, regulatory provisions guidance and policies providing for the removal of SEC ALJs as applied by the SEC;

Declaring unconstitutional the SEC's disregard of its own statutes, regulatory provisions and policies;

Enjoining the SEC from carrying out an administrative proceeding against Ms. Cochran based on the allegations in the OIP or any other allegations arising from the same transactions or occurrences relied upon in the OIP;

Providing such other and further relief as this Court may deem just and proper, including reasonable attorney's fees and costs of this action.

Dated: January 18, 2019

By:     /s/ Karen Cook_____

         Karen Cook
         Texas Bar No. 12696860
         Karen Cook, PLLC
         1717 McKinney Avenue
         Suite 700
         Dallas, TX 75202
         Telephone: 214-593-6429
         Fax: 214-593-6410
         Email: karen@karencooklaw.com

         Steven M. Simpson (*pro hac vice*), DC Bar No. 462553
         Margaret Little (*pro hac vice*), CT Bar No. 303494
         New Civil Liberties Alliance
         1225 19th St. NW, Suite 450
         Washington, DC 20036
         Telephone: 202-869-5210
         Email: steve.simpson@ncla.legal
         Email: peggy.little@ncla.legal

*Attorneys for Plaintiff Michelle Cochran*