**Original Copy**

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MICHELLE COCHRAN,

               Plaintiff

v.

U.S. SECURITIES AND EXCHANGE
COMMISSION, JAY CLAYTON, in his
official capacity as Chairman of the U.S.
Securities and Exchange Commission, and
MATTHEW G. WHITAKER, in his official
capacity as Acting United States Attorney
General,

               Defendants.

CIVIL ACTION NO: 4:19-cv-00066-A



CLERK OF COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 1 2019  9:51

CLERK, U.S. DISTRICT COURT
By _____
           Deputy

**PLAINTIFF'S BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ............................................................................................................... 5

   I.      Plaintiff Is Entitled to an Injunction.................................................................. 8

       A.   Plaintiff is Likely to Succeed on the Merits................................................. 8

       B.   Plaintiff Will Suffer Irreparable Injury Absent an Injunction.................................... 11

       C.   The Balance of Equities Favors Plaintiff .................................................... 14

       D.   The Public Interest Favors Granting a Preliminary Injunction .................................. 15

   II.     This Court Has Jurisdiction to Hear Plaintiff's Constitutional Claims...................... 16

       A.   The Exchange Act Displays No Congressional Intent to Limit Jurisdiction ............. 18

       B.   Congress Could Not Have Intended SEC ALJs, Sitting in Violation of Article II, to Preside Over Enforcement Proceedings.................................................. 19

       C.   Congress Did Not Intend SEC ALJs to Adjudicate Constitutional Claims Challenging Their Own Protections From Being Removed ...................................... 20

       D.   The Decisions That Have Precluded Jurisdiction Do Not Control Here .................. 23

CONCLUSION............................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)................................................................. 19

*Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015) ......................................................... 6, 16, 23

*Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) .................................................... 6, 16, 23

*Boumediene v. Bush*, 553 U.S. 723 (2008) ............................................................... 13, 16

*Califano v. Sanders*, 430 U.S. 99 (1977) .................................................................... 19

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)............................................... 22

*Clark v. Martinez*, 543 U.S. 371 (2005) ............................................................... 7, 20

*Clinton v. City of New York*, 524 U.S. 417 (1998)...................................................... 13, 16

*County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)........................................... 13

*Elgin v. Department of Treasury*, 567 U.S. 1 (2012)..................................... 7, 8, 17, 21

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)............. passim

*Freytag v. C.I.R.*, 501 U.S. 868 (1991)........................................................................ 14

*G.&V. Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994)........... 15

*Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) .............................................. 15

*Hill v. SEC*, 114 F.Supp.3d 1297 (N.D. Ga. 2015)...................................................... 15

Hill v. SEC, 825 F.3d 1236 (11th Cir. 2016).................................................................. 6

*Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935)...................................................... 10

*Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015)..................................................... 16, 19

*Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018) .............................. 16

*Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355 (1986)...................................... 18

*Lucia v. SEC*, 138 S. Ct. 2044 (2018)................................................................... passim

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)................................................. 11, 12

*Morrison v. Olson*, 487 U.S. 654 (1988) .................................................................... 10

*Nichols v. Alcatel USA, Inc.*, 532 F.3d 364 (5th Cir. 2008)........................................... 8

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012)................... 15

*Ramos v. D.C. Dep't of Cons. & Regulatory Affairs*, 601 A.2d 1069 (D.C. 1992)...................... 16

*Romer v. Evans*, 517 U.S. 620 (1996)........................................................................ 13

*Rust v. Sullivan*, 500 U.S. 173 (1991)................................................................... 7, 20

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)............................................................. 16

ii

*Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F.Supp.2d 507 (M.D. La. 2001).................................................................................................................................. 12

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)........................................................ passim

*Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016) ........................................................................ passim

*United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982) ........... 12, 22

*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997)......................................... 12, 22

**Constitutional Provisions**

Art. II, § 1, cl. 1................................................................................................................... 10

**Statutes**

15 U.S.C. § 78u(d) ............................................................................................................... 15

15 U.S.C. § 78y ................................................................................................................ 18, 22

15 U.S.C. §§ 78d-1(a) ......................................................................................................... 15

28 U.S.C. § 1331 .................................................................................................................. 16

5 U.S.C. § 7521 (a) .............................................................................................................. 10

**Other Authorities**

11A *Wright & Miller, Fed. Pract. & Proc.* § 2948.1 (3d ed. 2018) .............................................. 12

Br. For Resp't Supporting Certiorari, *Lucia v. SEC*, at 10-15 (U.S. Nov. 29, 2017) .................... 15

Br. For Resp't Supporting Pet'r, *Lucia v. SEC*, 2018 WL 1251862, at *52-53 (U.S. Feb. 21, 2018).................................................................................................................................. 6

Canon 3, Code of Conduct for United States Judges................................................................... 22

## INTRODUCTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff Michelle Cochran moves for a preliminary injunction preventing the Securities and Exchange Commission (SEC) from subjecting her to an unconstitutional enforcement proceeding for the second time in two years.

The first unconstitutional proceeding began in April 2016, when the SEC filed an order initiating proceedings against the accounting firm that employed Ms. Cochran as an auditor, alleging that it had violated the Securities Exchange Act of 1934 by failing to follow various accounting standards in audits and quarterly reviews it had performed. In addition to the firm and its founder, the order also named Ms. Cochran and another accountant at the firm. Ms. Cochran's employer settled with the SEC, leaving her and the other employee to face claims that they had aided and abetted the firm's violations. In October 2016, Ms. Cochran defended herself *pro se* in a hearing before an SEC administrative law judge who ruled for the SEC.

While Ms. Cochran's proceeding was pending, the Supreme Court decided *Lucia v. SEC*, 138 S. Ct. 2044 (2018), in which the Court held that the very same ALJ who presided over Ms. Cochran's proceeding had been appointed in violation of the Constitution's Appointments Clause. The Court voided the proceeding against Mr. Lucia and then directed the SEC to reassign his matter to a new ALJ on remand. *Id.* at 2054-55.

Recognizing that the same problem existed with the rest of its ALJs, the SEC attempted to "ratify" its previous appointments in an effort to cure the constitutional defect, and then it reassigned all pending enforcement matters, including Ms. Cochran's, to new ALJs.

The reinstituted proceeding against Ms. Cochran is just as unconstitutional as the original proceeding, however. Whereas Ms. Cochran's first ALJ was unconstitutionally appointed, her

1

second ALJ presides over matters in violation of the President's removal power. SEC ALJs are protected from removal by several layers of tenure protection, which insulates them from control by the President in violation of Article II. *See Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010). The government admitted the existence of this constitutional problem with the SEC's ALJs in *Lucia*, and Justice Breyer noted this issue in his concurring opinion in the same case. *Lucia*, 138 S. Ct. at 2057.

The SEC has already subjected Ms. Cochran to one unconstitutional administrative proceeding. This Court should enjoin the SEC from doing so a second time.

## STATEMENT OF FACTS

Michelle Cochran is a CPA licensed in Texas. In 2007, having been out of the workforce for some time, Ms. Cochran took a job as an hourly contractor at a small accounting firm called The Hall Group CPAs. The firm did auditing work, mostly for nonprofits and privately held companies, but it also handled audits for a few, small, publicly traded companies. Ms. Cochran initially worked 10-15 hours per week, but gradually increased her time to 35 hours per week. Declaration of Michelle Cochran ¶¶ 2-3 (Ex. A, Appendix at 1).

The firm turned out to be a difficult place to work, and Ms. Cochran clashed with Mr. Hall often. *Id.* ¶ 4 (App. at 2). Among other reasons, Hall wanted Ms. Cochran to become a non-equity partner in the firm so she could act as an engagement partner on audits and reviews of public companies. *Id.* ¶ 5 (App. at 2). Ms. Cochran did not want to become a partner at The Hall Group, however, because she was a part-time employee and did not want assume the liability that partnership might entail. *Id.* ¶ 6 (App. at 2). Hall continued to press the issue, and ultimately made partnership a condition of Ms. Cochran's continued employment. Ms. Cochran became a non-equity partner in The Hall Group in 2012. The position carried no extra pay, and her

2

compensation continued to be based on the hours she worked. Hall remained the only equity partner and 100% owner of the firm. *Id.* ¶¶ 6-7 (App. at 2). In May 2013, Ms. Cochran notified Hall that she intended to resign. Her last day at the firm was July 1, 2013. *Id.* ¶ 8 (App. at 2).

On April 26, 2016, almost three years after Ms. Cochran left The Hall Group, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings (OIP) against David Hall and The Hall Group, Ms. Cochran and Susan Cisneros, another accountant who had worked as a contractor at the firm, as respondents. *Id.* ¶ 9 (App. at 2-3); Ex. 1: *Order Instituting Proceedings*, Securities Exchange Act of 1934, Release No. 77718 (April 26, 2016). (App. at 5). The SEC alleged various violations of the Securities Exchange Act of 1934 (the "Exchange Act"), most of which resulted from The Hall Group's alleged failure to comply with auditing standards issued by the Public Company Accounting Oversight Board (PCAOB) on a number of quarterly reviews and annual audits it had performed between 2010 and 2013. Ex. 1 (App. at 7, 9). Ms. Cochran's liability was premised on the fact that she had been the "engagement partner" on several of the audits and reviews. Ex. 1 (App. at 7, 8 ¶¶ 10-11, 9 ¶ 13).

The SEC held a hearing before ALJ Cameron Elliot on October 24, 2016. Ms. Cochran represented herself *pro se*. On the day of the hearing, Mr. Hall and his firm settled the charges against him, and the hearing proceeded with Ms. Hall and Ms. Cisneros as the only respondents. Hall testified on behalf of the SEC. Cochran Decl. ¶ 10 (App. at 3). On March 7, 2017, ALJ Elliot issued an Initial Decision ruling in the SEC's favor on most of the claims against Ms. Cochran and Ms. Cisneros. Cochran Decl. ¶ 11 (App. at 3). *See also Initial Decision as to Michelle L. Helterbran Cochran, CPA, and Susan Cisneros*, Administrative Release No. 1114

3

(March 7, 2017).[1] He fined Ms. Cochran $22,500 and banned her from practicing as an accountant before the SEC for at least five years, at which point she could reapply for admission. He imposed penalties on Ms. Cisneros as well. Cochran Decl. ¶ 11 (App. at 3).

The SEC adopted ALJ Elliot's Initial Decision as final on June 15, 2017. *Id.* ¶ 12 (App. at 3); Ex. 2: *Notice That Initial Decision Has Become Final*, Exchange Act Release No. 80949 (June 15, 2017) (App. 19). Ms. Cochran objected to the SEC's order, however, arguing that the Initial Decision had not been properly served on her. She sought leave to petition the SEC to review the decision, and the SEC ordered further briefing on the issue. Cochran Decl. ¶ 13 (App. at 3).

Roughly a year later, on June 21, 2018, the Supreme Court decided *Lucia v. SEC*, holding that ALJ Elliot had been unconstitutionally appointed and vacating an enforcement proceeding he had presided over against the petitioner, Raymond Lucia. 138 S. Ct. 2044, 2055 (2018). The Court directed the SEC to hold a new hearing before a different, properly appointed ALJ on remand. *Id.* The SEC had known for some time that there were problems with the appointment of its ALJs, however. Most notably, in its reply to Mr. Lucia's petition for certiorari, the U.S. Solicitor General, on behalf of the SEC, *agreed* with Mr. Lucia that SEC ALJs were unconstitutionally appointed. *Id.* at 2050. This led the SEC to attempt to "ratify" the prior appointment of its ALJs on November 30, 2017 and to direct ALJs in all pending matters to reconsider their decisions. Cochran Decl. ¶ 14 (App. 3-4); Ex. 3 (App. 22-23). On January 26,

---

[1] All of the documents from Ms. Cochran's enforcement proceeding are available at https://www.sec.gov/litigation/apdocuments/ap-3-17228.xml. To avoid filing an unnecessarily voluminous appendix, Plaintiffs have included in the Appendix only those documents that are relevant to the instant motion.

2018, ALJ Elliot ratified his earlier decision for the SEC in Ms. Cochran's proceeding. Cochran Decl. ¶ 15 (App. at 4).

On August 22, 2018, after *Lucia* was decided, the SEC vacated all decisions in pending enforcement matters and assigned them to new ALJs. It also again attempted to "ratify" the appointment of its ALJs. Cochran Decl. ¶ 16 (App. at 4); Ex. 4: *Order*, Exchange Act Release No. 83907 (Aug. 22, 2018) (App. 27-28, 32). Ms. Cochran's matter was assigned to ALJ Carol Fox Foelak on September 12, 2018. Cochran Decl. ¶ 17 (App. at 4); Ex. 5: *Chief Administrative Law Judge's Order Assigning Proceedings Post* Lucia v. SEC, Administrative Proceedings Rulings, Release No. 5955 (September 12, 2018) (App. at 37, 38) (referring case no. 3-17228). On December 12, 2018, Ms. Cochran retained the undersigned counsel, who filed a motion to dismiss the enforcement proceeding before the ALJ on January 3, 2019. Cochran Decl. ¶ 18 (App. at 4). On January 4, 2019, the SEC filed an unopposed motion to stay the proceedings before the ALJ due to the government shut-down. That stay was lifted on January 30, 2019.

## ARGUMENT

The Supreme Court has held that "Officers of the United States," within the meaning of the Appointments Clause, may not be insulated from the President's power to remove them by multiple layers of tenure protection. *See Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 484 (2010). The SEC's ALJs are "Officers of the United States," *Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018), and, as described in detail below, they enjoy multiple layers of tenure protection. This scheme is unconstitutional. *See Free Enterprise Fund*, 561 U.S. at 495-508. The Solicitor General drew this unavoidable conclusion in the government's brief in response to the petition for certiorari in *Lucia*, pointing out that, on its face, the statutory scheme governing the removal of ALJs and SEC Commissioners violates the Constitution. *See* Br. For

5

Resp't Supporting Pet'r, *Lucia v. SEC*, 2018 WL 1251862, at *52-53 (U.S. Feb. 21, 2018).[2] The

Supreme Court declined to address the removal protection issue, however, in order to "await

'thorough lower court opinions to guide [its] analysis.'" *Lucia*, 138 S. Ct. at 2053 n. 1.

This Court is the appropriate forum in which to litigate the removal question. Resolving

the issue in this Court will not only save Ms. Cochran from being subjected to yet another

arduous and unconstitutional enforcement proceeding, it will save the *government* the time and

expense of another proceeding. There is no sensible reason for the SEC to insist on holding yet

another unconstitutional proceeding before yet another ALJ who cannot address Ms. Cochran's

constitutional claims. A preliminary injunction is therefore warranted, for "injunctive relief has

long been recognized as the proper means for preventing entities from acting unconstitutionally."

*Free Enterprise Fund*, 561 U.S. at 491 n.2 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61,

74 (2001)).

Prior to *Lucia*, however, a number of circuit courts held that the district courts lack

jurisdiction to hear claims such as Ms. Cochran's on the ground that Congress has assigned

exclusive jurisdiction over them to the administrative process. *See Bennett v. SEC*, 844 F.3d 174

(4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d

Cir. 2016); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir.

2015). The Fifth Circuit has not ruled on this issue, but the SEC will no doubt rely on these

circuit cases to argue that this court lacks jurisdiction to address Ms. Cochran's claim. If that

argument were accepted, it would mean that Ms. Cochran would have to litigate in an

---

[2] The Solicitor General argued that the Court should narrowly construe the statutory scheme in order to avoid a constitutional issue. It stated, however, that "[i]f the Court concludes that the interpretation of Section 7521 advocated here cannot be reconciled with the statute, then the limitations that the provision imposes on removal of the Commission's ALJs would be unconstitutional." Br. For Resp't, *Lucia v. SEC*, 2018 WL 1251862, at *53.

enforcement proceeding before an ALJ who, under *Lucia* and *Free Enterprise Fund*, is not constitutionally authorized to hear her claims. The result in her case, as in *Lucia*, would be that the current enforcement proceeding would be void *ab initio*, and Ms. Cochran would end up litigating all over again in yet a third enforcement proceeding.

That wasteful and pointless result should not be allowed to occur, however. There are two major problems with the SEC's argument and the circuit decisions on which the SEC will rely. First, the Supreme Court in *Free Enterprise Fund* already held that the statutory scheme at issue in this case does not preclude a constitutional challenge such as Ms. Cochran's in district court. *See* 561 U.S. at 490. Second, all the circuit court decisions that have held otherwise were decided *before Lucia*. Prior to *Lucia*, it was not clear that SEC ALJs are "Officers of the United States" who not only must be appointed by the President or the head of a department, but who also cannot be insulated from Presidential control by multiple layers of tenure protection. After *Lucia*, it is clear that SEC ALJs hold office in violation of the President's removal power. *See Free Enterprise Fund*, 561 U.S. at 495-508.

In analyzing the jurisdictional question, the pre-*Lucia* circuit courts relied on three Supreme Court decisions that focus on one fundamental question: Did Congress intend the claims at issue to be litigated through the administrative process in the first instance, rather than in the district courts? *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-15 (1994); *Free Enterprise Fund*, 561 U.S. at 489-90; *Elgin v. Department of Treasury*, 567 U.S. 1 (2012). As a general matter, courts do not presume that Congress intended to act unconstitutionally. *See, e.g., Clark v. Martinez*, 543 U.S. 371, 381 (2005) (stating that the canon of constitutional avoidance rests on "the reasonable presumption that Congress did not intend" an interpretation of its statutes "which raises serious constitutional doubts"); *Rust v. Sullivan*, 500 U.S. 173, 191 (1991)

(stating that the canon of constitutional avoidance "is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations."). Yet forcing individuals to litigate before ALJs who lack constitutional authority to hear their cases would be just that—unconstitutional. The natural conclusion is that Congress did not intend to require individuals such as Ms. Cochran to litigate before ALJs whose positions violation the Constitution. Under *Thunder Basin*, *Free Enterprise Fund*, and *Elgin*, therefore, this Court has jurisdiction to hear Ms. Cochran's removal claim.

We address Ms. Cochran's argument that she is entitled to a preliminary injunction first, because it is crucial for the Court to understand the nature of and strength of her argument that her ALJ violates Article II before further addressing the jurisdictional question.

## I.       Plaintiff Is Entitled to an Injunction

A party is entitled to a preliminary injunction if she can show (1) a substantial likelihood of success on the merits; (2) a substantial threat that she will suffer irreparable injury if an injunction is not granted, (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and that (4) granting the preliminary injunction is not adverse to the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

### A.       Plaintiff is Likely to Succeed on the Merits

In *Free Enterprise Fund*, the Supreme Court held that officers of the United States cannot be insulated from removal by the President by multiple layers of tenure protection. *See* 561 U.S. at 492. Under *Lucia*, SEC ALJs are officers of the United States under Article II, 138 S. Ct. at 2053-54,[3] and they are protected from removal by multiple layers of tenure protection.

---

[3] As set forth in Ms. Cochran's complaint, it is still an open question whether the SEC has properly re-appointed its ALJs. Complaint ¶¶ 52-53.

Accordingly, the ALJ who is presiding over Ms. Cochran's enforcement proceeding holds office in violation of Article II, and Ms. Cochran is therefore likely to succeed on the merits of her claim that SEC ALJs violate the President's removal power.

*Free Enterprise Fund* involved a challenge to the authority of the Public Company Accounting and Oversight Board (PCAOB) by an accounting firm being investigated by the Board and a nonprofit organization of which the firm was a member. *See* 561 U.S. at 487. PCAOB was created by the Sarbanes-Oxley Act of 2002 and vested with extensive regulatory powers over accounting firms that audit public companies. *Id.* at 484-85 (citing 15 U.S.C. § 7211 *et seq.*). The Sarbanes-Oxley Act places PCAOB under the SEC's oversight and makes willful violations of PCAOB's rules violations of the Exchange Act. *Id.* PCAOB consists of five members who are appointed by the SEC. *Id.* They are all considered officers of the United States under Article II. *Id.* at 486.

PCAOB members could not be removed from office at the President's will. Instead, they were removable only by the SEC for "good cause." To be removed from office, members of PCAOB had to willfully violate their own rules or a provision of the laws they oversee, willfully abuse their authority, or fail to enforce the rules or laws under their charge "without reasonable justification or excuse." *Id.* (quoting 15 U.S.C. § 7217(d)(3)). Removal of a PCAOB member required a formal order from the SEC, notice and a hearing, and the SEC's decision was subject to judicial review. *Id.* at 486-87. The members of the SEC are also subject to similar "good cause" restrictions on removal, as they may be removed only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 487. Hence, PCAOB was insulated from Presidential control not by one layer of tenure protection, but by two. *Id.*

This double layer of removal protection caused the constitutional problem in *Free Enterprise Fund*. As the Court explained, Article II vests the executive power in a President who must "take care that the laws be faithfully executed." Art. II, § 1, cl. 1. Because it is impossible for one person to perform all of the executive department's duties, the Constitution provides for executive officers to assist the President. But to ensure that those officers remain accountable, the President must have the power to remove them from office. *See* 561 U.S. at 483. "The President cannot 'take care that the laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Id.* at 484.

The Court had previously held that one layer of tenure protection did not violate Article II. Thus, in *Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935), the Court concluded that Congress could create an independent commission, the FTC, whose members could not be removed without good cause. And in *Morrison v. Olson*, 487 U.S. 654 (1988), the Court upheld good cause restrictions on the power of principal executive officers to remove their inferiors.

The difference in *Free Enterprise Fund* was that Congress had combined *both* types of removal restrictions for PCAOB, which, the Court held, went too far. Members of PCAOB were not only protected from removal by good cause, but the determination of whether good cause exists was taken from the President and vested in the commissioners of the SEC, who themselves are protected from the President's direct control. *See* 561 U.S. at 495. The result was "a Board that is not accountable to the President, and a President who is not responsible for the Board." *Id.*

The same principle applies with even more force to SEC ALJs, because they are subject to *three* levels of tenure protection. The APA permits removal of ALJs only for "good cause" established and determined by the Merit Systems Protection Board (MSPB). 5 U.S.C. § 7521 (a). The members of the MSPB, in turn, may not be removed except for "inefficiency, neglect of

duty, or malfeasance in office." *Id.* § 1202(d). And, of course, SEC Commissioners, who cannot remove ALJs without approval from the MSPB, *id.* § 7521, are themselves protected by the same restrictions that apply to removal of MSPB members. *See Free Enterprise Fund*, 561 U.S. at 487 (noting that SEC Commissioners can be removed only for "inefficiency, neglect of duty, or malfeasance in office"). These multiple layers of tenure protection for SEC ALJs violate Article II. *Id.* at 492.

The Solicitor General came to this conclusion in *Lucia* and urged the Supreme Court to reach the removal protections question. Br. For Resp't Supporting Pet'r, *Lucia v. SEC*, 2018 WL 1251862, at *52-53 (U.S. Feb. 21, 2018). In his concurrence in *Lucia*, Justice Breyer referred to the removal protections issue as the "embedded constitutional question" in the case, and all but admitted that, under *Free Enterprise Fund*, SEC ALJ's violate Article II. *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring) ("Congress seems to have provided administrative law judges with two levels of protection from removal without cause—just what *Free Enterprise Fund* interpreted the Constitution to forbid in the case of Board members"). The Supreme Court declined to reach the question in *Lucia*, however, in order to "await thorough lower court opinions to guide our analysis of the merits." *Id.* at 2050 n.1.

Under *Free Enterprise Fund* and *Lucia*, it is not merely substantially likely that Ms. Cochran will prevail on the merits of her removal claim, it is virtually certain.

### B.  Plaintiff Will Suffer Irreparable Injury Absent an Injunction

An injunction is necessary to prevent Ms. Cochran from being compelled to submit—yet again—to an unconstitutional and therefore void enforcement proceeding. Having to litigate in such a proceeding constitutes irreparable harm for three independent reasons.

First, it violates Ms. Cochran's constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v.*

11

*Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) in case alleging a Fourth Amendment violation). *See also Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1055-56 (5th Cir. 1997) (finding irreparable harm where plaintiff had to submit to a hearing that violated her due process rights); 11A *Wright & Miller, Fed. Pract. & Proc.* § 2948.1 (3d ed. 2018) ("When an alleged deprivation of a constitutional right is involved … most courts hold that no further showing of irreparable injury is necessary.").

The Fifth Circuit's decision in *Valley v. Rapides Parish School Board* is instructive on this point. In that case, a public school superintendent sought a preliminary injunction to prevent the defendant school board from firing her in violation of her right to due process of law. She argued that the hearing she had received violated due process because several members of the board were hopelessly biased against her. *See* 118 F.3d at 1047. Agreeing that the board was indeed biased, the Fifth Circuit found that her due process rights had been violated and that the "constitutionally infirm hearing she was subject to" constituted irreparable harm. *Id.* at 1056.

Here, the Constitution requires that Ms. Cochran be afforded a hearing before an ALJ who holds office in compliance with Article II. *See Lucia*, 138 S. Ct. at 2055 (concluding that petitioner was entitled to a hearing before a constitutionally-authorized ALJ). Like the plaintiff in *Valley*, Ms. Cochran has already been subjected to one constitutionally-infirm hearing. Unlike the plaintiff in *Valley*, she is about to be subjected to yet another. Unless this Court enjoins the SEC enforcement proceeding, she will suffer irreparable harm. *See also, e.g., United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982) (irreparable injury in proceeding before adjudicator with a financial stake in the dispute presumed); *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F.Supp.2d 507, 515 (M.D. La. 2001) (finding irreparable harm to landowner's property rights under the Fifth and Fourteenth

Amendments where parish sought to enforce an ordinance against a landowner that did not apply to the properties at issue).

Ms. Cochran also has a protectable interest in maintaining the separation of powers. As the Supreme Court has made clear, the separation of powers "serves not only to make Government accountable but also to secure individual liberty." *Boumediene v. Bush*, 553 U.S. 723, 742 (2008). *See also Clinton v. City of New York,* 524 U.S. 417, 450 (1998) (Kennedy, J., concurring) ("Liberty is always at stake when one or more of the branches seek to transgress the separation of powers."). If an injunction is not granted the SEC's ALJs will continue to be insulated from the President's power to remove them. That violates not only Article II, but also the separation of powers, because it amounts to Congress putting unconstitutional constraints on the executive power.

Second, without an injunction, Ms. Cochran will be forced to spend time and expense litigating for no reason other than that the SEC insists on forcing her to endure another invalid proceeding. This would allow the agency to punish her with *undue* process. While the costs of litigation are often not found to constitute irreparable harm, Ms. Cochran's injury is not simply litigation time and expense. It is *utterly pointless* litigation time and expense, because her ALJ sits in violation of Article II. It is a fundamental maxim of due process that government must act with some rational basis and in a manner that is not arbitrary and capricious.

> We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government" ... whether the fault lies in a denial of fundamental procedural fairness ... or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective.

*County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (internal citations omitted). *See also, e.g.*, *Romer v. Evans*, 517 U.S. 620, 635 (1996) (stating the "conventional and venerable" principle that "a law must bear a rational relationship to a legitimate governmental purpose").

Yet requiring Ms. Cochran to litigate in an invalid enforcement proceeding is the very definition of irrational. *Cf. Springtree Apartments*, 207 F.Supp.2d at 515 (finding that application of ordinance that did not apply to landowner's property constituted irreparable harm).

Third, requiring Ms. Cochran to endure another unconstitutional hearing will damage her reputation. *See Valley*, 118 F.3d at 1056 (finding irreparable harm because school superintendent had suffered harm to her reputation from the board's biased hearing).

For all these reasons, absent an injunction, Ms. Cochran will suffer irreparable harm.

**C.  The Balance of Equities Favors Plaintiff**

While Ms. Cochran will suffer irreparable harm if she is forced to litigate another invalid enforcement proceeding, the SEC faces no harm at all from an injunction. The SEC has no interest in requiring Ms. Cochran to endure yet another unconstitutional proceeding. In fact, the SEC should welcome a definitive ruling on whether its ALJs are unconstitutionally insulated from presidential control. An action in this Court will save the SEC the time and expense of having to conduct a void enforcement proceeding before an ALJ. *See Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991) ("alleged defect in the appointment ... goes to the validity of the ... proceeding"). The Solicitor General has already asked the Supreme Court to resolve the removal protection question. The SEC can have no justifiable interest in wasting the time and resources of both the government and Ms. Cochran in a pointless administrative proceeding.

Nor are Ms. Cochran's arguments a surprise to the SEC. It has known that its ALJs are "Officers of the United States" at the latest since November 2017, when the government filed its brief responding to the petition for certiorari in *Lucia* and agreed with the petitioner. *See* Br. For

14

Resp't Supporting Certiorari, *Lucia v. SEC*, at 10-15 (U.S. Nov. 29, 2017).[4] As the Solicitor

General noted, the fact that ALJs are officers of the United States creates a constitutional

problem not only in the appointment of ALJs but for their removal as well. *See id.* at 18-21.

Indeed, the SEC was on notice of this issue in 2015, when a district court held that SEC ALJs

were inferior officers and thus violated the Appointments Clause. *See Hill v. SEC*, 114 F.Supp.3d

1297, 1320 (N.D. Ga. 2015), *vacated and remanded, Hill v. SEC*, 825 F.3d 1236, 1252 (11th Cir.

2016) (finding district court lacked jurisdiction). Moreover, the SEC has always had the option

of proceeding in district court. *See* 15 U.S.C. §§ 78d-1(a), 78u(d). Even if the SEC's decision to

proceed against Ms. Cochran the first time before an unconstitutional ALJ were excusable, its

decision to do so a second time is not.

The balance of equities thus strongly supports Ms. Cochran.

### D.     The Public Interest Favors Granting a Preliminary Injunction

The public interest always favors the enforcement of the Constitution. *See Gordon v.

Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[I]t may be assumed that the Constitution is the

ultimate expression of the public interest.") (citation omitted); *Opulent Life Church v. City of

Holly Springs, Miss.*, 697 F.3d 279 298 (5th Cir. 2012) (preliminary injunction issued to protect

First Amendment rights); *G.&V. Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d

1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a

party's constitutional rights.").

Here, an injunction would protect Ms. Cochran's rights, along with the proper application

of Article II and the separation of powers. *See Free Enterprise Fund*, 561 U.S. at 492. *See also*

---

[4] This brief is available at https://www.supremecourt.gov/DocketPDF/17/17-130/21998/
20171129155714442_17-130%20Lucia.pdf.

*Boumediene*, 553 U.S. at 742; *Clinton*, 524 U.S. at 450 (Kennedy, J., concurring); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018) (Gorsuch J., concurring) (noting that the "faithful expression of ancient due process and separation of powers principles the framers recognized" is "vital to ordered liberty under the Constitution"). An injunction is therefore in the public interest.

## II.     This Court Has Jurisdiction to Hear Plaintiff's Constitutional Claims

There is no question that this Court has Article III jurisdiction to resolve Plaintiff's constitutional claims, because those claims "arise under" the Constitution and laws of the United States. 28 U.S.C. § 1331. *See, e.g.*, *Lucia*, 138 S. Ct. at 2053 (resolving Appointments Clause claim); *Free Enterprise Fund*, 561 U.S. at 489-91 (resolving Appointments Clause and removal power claims).

It is equally clear that an SEC ALJ cannot address Ms. Cochran's removal protection claim because administrative agencies have no authority to resolve constitutional claims. *See, e.g.*, *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 673-674 (6th Cir. 2018) (stating that "only the Judiciary enjoys the power to invalidate statutes inconsistent with the Constitution"); *Ramos v. D.C. Dep't of Cons. & Regulatory Affairs*, 601 A.2d 1069, 1073 (D.C. 1992) (same). As a result, "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994).

The only question, then, is whether something deprives this Court of jurisdiction in this case. The circuit courts that have answered in the affirmative in similar cases[5] have relied on a trio of Supreme Court cases that involved challenges to administrative actions in district court:

---

[5] *See Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015).

*Thunder Basin, Free Enterprise Fund* and *Elgin v. Department of Treasury*, 567 U.S. 1 (2012). In those cases, the Supreme Court held that statutes providing for agency review will restrict district court jurisdiction only where (1) "the statutory scheme displays a fairly discernible intent to limit jurisdiction," and (2) "the claims at issue are of the type Congress intended to be reviewed within the statutory structure." *Free Enterprise Fund*, 561 U.S. at 490 (quoting *Thunder Basin*, 510 U.S. at 212) (internal quotation marks omitted). *See also Elgin*, 567 U.S. at 10, 17. Neither is true here, and the simplest path to that conclusion is through the Supreme Court's decision in *Free Enterprise Fund*. In *Free Enterprise Fund*, the Court concluded that the district court had jurisdiction over an almost identical claim to Ms. Cochran's despite the existence of the same judicial review provision that applies here. *See* 561 U.S. at 489-90.

Ms. Cochran's case for jurisdiction is even stronger than the one in *Free Enterprise Fund*, because she is challenging the constitutional authority of the very ALJ who will hear her claim. Under *Lucia* and *Free Enterprise Fund*, the ALJ in Ms. Cochran's enforcement proceeding (like all SEC ALJs) lacks constitutional authority, meaning that her enforcement proceeding, if it goes forward, will be void, just as Mr. Lucia's proceeding was eventually held to be void.

None of the three Supreme Court decisions on point involved challenges to ALJs who held office in violation of Article II, and all the circuit court decisions applying those cases predated *Lucia*. After *Lucia*, it is clear that ALJs are officers of the United States, and, as the Solicitor General conceded, that means they sit in violation of Article II. Congress could not have intended people in Ms. Cochran's position to litigate before ALJs who lack constitutional authority to hear their claims. Accordingly, this Court has jurisdiction to hear her claims.

## A.    The Exchange Act Displays No Congressional Intent to Limit Jurisdiction

The Exchange Act permits the SEC to institute administrative proceedings to enforce the securities laws. While the Commission itself may preside over those proceedings, typically it delegates that task to ALJs under 15 U.S.C. § 78d-1(a). *See Lucia*, 138 S. Ct. at 2049 (explaining statutory scheme for administrative proceedings). ALJs conduct proceedings according to § 78d-1 and the Commission's rules, and then issue Initial Decisions, which can be appealed to the full Commission. *See Lucia*, 138 at 2049. If an Initial Decision is not appealed or if the Commission affirms a decision, it is "deemed the action of the Commission." *Id.* (citing § 78d-1(c)).

Under § 78y, parties may obtain review of SEC final orders in a court of appeals. In *Free Enterprise Fund*, the Court found that § 78y "does not expressly limit the jurisdiction that other statutes confer on district courts. . . . Nor does it do so implicitly." 561 U.S. at 489.

This conclusion follows from the plain text of § 78y, which states only that aggrieved parties "may" obtain review in a court of appeals, not that they must do so. It is also supported by the entire statutory scheme. An administrative agency "literally has no power to act ... unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). The SEC is empowered only to investigate and enforce violations of the securities laws, not to adjudicate constitutional challenges to the authority of its ALJs. *See* 15 U.S.C. § 78u(a)(1) ("Authority and discretion of Commission to investigate violations" of the Exchange Act).[6] The Exchange Act also provides that "the rights and remedies provided by this chapter shall be *in addition to* any and all other rights and remedies that may exist at law or in equity."

---

[6] As the Second Circuit acknowledged, "The statutes that establish the SEC's scheme of administrative and judicial review ... do not expressly preclude federal district court jurisdiction over [an] Appointments Clause claim." *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016). Although the court held that the statutes implicitly preclude jurisdiction, the majority's reasoning in *Tilton* conflicts with *Free Enterprise Fund*. *See* 824 F.3d at 292-99 (Droney J., dissenting).

*Id.* § 78bb(a)(2) (emphasis added). The Supreme Court has held that similar clauses in other

statutes show Congressional intent to allow challenges to enforcement actions in federal district

court, despite an available statutory review procedure. *See Abbott Laboratories v. Gardner*, 387

U.S. 136, 144-45 (1967), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977).

Neither the Exchange Act as a whole, nor § 78y in particular, displays an intent to

deprive this Court of jurisdiction to hear Ms. Cochran's constitutional claim.

### B.   Congress Could Not Have Intended SEC ALJs, Sitting in Violation of Article II, to Preside Over Enforcement Proceedings

The second prong of the jurisdictional test the Supreme Court applied in *Free Enterprise*

*Fund* (often referred to as the "*Thunder Basin*" test) is whether the claims at issue are "of the

type that Congress intended to be reviewed within the statutory structure." 561 U.S. at 489. The

Court has typically focused on three factors to determine Congressional intent. As it stated in

*Free Enterprise Fund*: "[W]e presume that Congress does not intend to limit jurisdiction if a

finding of preclusion could foreclose all meaningful judicial review; if the suit is wholly

collateral to a statute's review provisions; and if the claims are outside the agency's expertise."

561 U.S. at 489 (citing *Thunder Basin*, 510 U.S. at 212-213) (internal quotation marks omitted).

These are not the only relevant considerations, however. As the D.C. Circuit noted in *Jarkesy v.*

*SEC*, 803 F.3d 9 (D.C. Cir. 2015), these three factors do not "form three distinct inputs into a

strict mathematical formula. Rather, the considerations are general guideposts useful for

channeling the inquiry into whether the particular claims at issue fall outside an overarching

congressional design." *Id.* at 402. The ultimate question, in other words, is one of Congressional

intent.

Here, Congress could not have intended individuals such as Ms. Cochran to litigate their

claims before SEC ALJs because, after *Lucia*, those ALJs occupy their positions in violation of

Article II. Under general principles of statutory interpretation, Congress is presumed to

"legislate[] in the light of constitutional limitations." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991).

*See also Clark v. Martinez*, 543 U.S. 371, 381 (2005) (stating that the canon of constitutional

avoidance rests on "the reasonable presumption that Congress did not intend" an interpretation of

its statutes "which raises serious constitutional doubts"). As noted above, 15 U.S.C. § 78d-1(a)

permits the SEC to delegate administrative enforcement functions to "administrative law

judges." *Lucia* and *Free Enterprise Fund* make clear, however, that those "administrative law

judges" must be appointed (*Lucia*) and removable consistent with Article II (*Free Enterprise

Fund*). Concluding that Congress intended the statutory scheme at issue in this case to require

Ms. Cochran to litigate before yet another unconstitutional ALJ would mean Congress intended

to violate the Constitution. The Supreme Court's decisions in *Thunder Basin*, *Free Enterprise

Fund* and *Elgin* do not countenance such a result.

C. **Congress Did Not Intend SEC ALJs to Adjudicate Constitutional Claims
Challenging Their Own Protections From Being Removed**

Apart from the impropriety of ascribing to Congress the intent to violate the Constitution,

the second prong of the *Thunder Basin* test weighs in Ms. Cochran's favor, because Congress did

not intend claims such as hers to be adjudicated through the administrative process. The types of

claims at issue and facts of *Thunder Basin*, *Free Enterprise Fund* and *Elgin* all support this

conclusion.

*Thunder Basin* involved constitutional and statutory challenges to a provision of the

Federal Mine Safety and Health Amendments Act that required mine operators to post certain

kinds of notices to their employees. *See* 510 U.S. at 203-05. Because the administrative

commission created under the Act typically addressed disputes concerning the notice

requirement, among other provisions of the Act, the Supreme Court held that even plaintiff's

constitutional challenges involved the same sort of statutory analysis and fact-finding that the commission typically performed. As a result, the Court concluded that the three factors listed above weighed against district court jurisdiction. *Id.* at 207, 212-15.

Similarly, *Elgin* involved a constitutional challenge by a federal employee to a provision of the Civil Service Reform Act under which he was fired. Finding that the Merit Systems Protection Board, which was the relevant administrative body at issue in the case, was created in order to adjudicate disputes over fired employees, the Court again held that the three *Thunder Basin* factors weighed against district court jurisdiction. *See Elgin*, 567 U.S. at 12-15, 22-23 (holding that constitutional claims pertaining to plaintiff's employment were of the type that the MSPB "routinely considers" and as to which its expertise was relevant).

By contrast, *Free Enterprise Fund* involved a claim that challenged the very authority of an administrative entity—PCAOB—to function. As the Supreme Court stated, "petitioners object to the Board's existence, not to any of its auditing standards." 561 U.S. at 490. In *Thunder Basin* and *Elgin* the plaintiffs were challenging the application of statutes to them, and were seeking, albeit by asserting constitutional claims, to be relieved of the obligations those statutes imposed. The Court concluded in both cases that applying statutes and resolving disputes of that nature is what administrative tribunals are designed to do. In *Free Enterprise Fund*, however, the Court recognized that Congress did not intend the members of PCAOB to resolve what amounted to a question about the terms of their own employment and the power of their superiors to remove them from office. The Court thus concluded that the *Thunder Basin* factors supported district court jurisdiction. *Id.* at 491

The same reasoning the Supreme Court applied in *Free Enterprise Fund* applies here, and all three *Thunder Basin* factors therefore weigh in favor of jurisdiction. Ms. Cochran cannot

21

obtain meaningful judicial review of her claim before an administrative law judge for at least two

reasons. First, her claim puts the ALJ in the untenable position of trying to decide a question that

goes to the terms of that ALJ's own employment. If Ms. Cochran prevails on her claim, the very

ALJ hearing her case will no longer enjoy multiple levels of tenure protection. It is a

fundamental maxim of judicial ethics that a judge should not preside over a case in whose

outcome the judge has an interest. *See* Canon 3, Code of Conduct for United States Judges;

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (holding that even the *appearance* of

potential bias by a court toward a litigant violates the Due Process Clause).

Second, review under the SEC administrative scheme cannot redress the injury Ms.

Cochran seeks to prevent—which is a hearing before an unconstitutional officer. That is true

irrespective of the fact that she may appeal an adverse ruling to a circuit court under 15 U.S.C.

§ 78y. Under *Lucia*, Ms. Cochran is constitutionally entitled to a hearing before a properly

appointed ALJ. *See* 138 S. Ct. at 2055. Circuit court review after the fact cannot give her back a

right to which the Supreme Court has just found she is entitled in the first instance. *See, e.g.*,

*Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (holding that the

deprivation of a school principal's due process right to a fair and impartial termination hearing

constituted irreparable injury); *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d

693, 701 (7th Cir. 1982) (finding irreparable injury when plaintiff was forced to submit to an

unconstitutional hearing). Circuit court review also cannot prevent the harm of having to incur

the substantial litigation, time and resource burdens and reputational harm imposed by the

administrative proceedings. *See Valley*, 118 F.3d at 1056 (finding reputational harm constitutes

irreparable injury). And even if Ms. Cochran were to prevail on her removal protection claim

after litigating an SEC enforcement proceeding, the result would likely be a remand and yet a

*third* enforcement proceeding. She should not have to litigate an action before an SEC ALJ that is certain to be voided simply to be afforded the opportunity to endure the entire process over again. One unconstitutional hearing before an ALJ should be enough.

The remaining *Thunder Basin* factors weigh in favor of jurisdiction in this Court as well. As in *Free Enterprise Fund*, Ms. Cochran's claim is wholly collateral to the Exchange Act's review provisions because it challenges the ALJ's constitutional authority. *See* 561 U.S. at 490. And her claim is outside the agency's expertise and solidly within this Court's expertise. *See id.* at 491 (holding that plaintiffs' removal and Appointments Clause claims "do not require technical considerations of agency policy"). *See also Hill v. SEC*, 825 F.3d 1236, 1251 n.8 (11th Cir. 2016) (stating that "the SEC conceded that *Free Enterprise Fund* compels the conclusion that the respondents' Appointments Clause challenge is outside the Commission's expertise") *Tilton*, 824 F.3d at 293-99 (Droney J., dissenting) (arguing that plaintiff's removal claim was wholly collateral to the statutory scheme and outside the SEC's expertise).

### D.     The Decisions That Have Precluded Jurisdiction Do Not Control Here

This Court should not follow any of the circuit court decisions that have precluded jurisdiction for at least three reasons.

First, the decisions all predate *Lucia*. As a result, none addressed a claim as strong as Ms. Cochran's or considered the fact that interpreting the statutory scheme against jurisdiction means ascribing to Congress the intent to allow enforcement actions to be heard by ALJs who violate Article II.

Second, the courts relied on *Thunder Basin* and *Elgin* in precluding jurisdiction and inexplicably minimized the significance of *Free Enterprise Fund*. *See Bennett*, 844 F.3d at 181-88; *Hill*, 825 F.3d at 1242-44, 1245-52; *Tilton*, 824 F.3d at 283-90; *Bebo*, 799 F.3d at 769-75. The dissent in *Tilton* noted this, pointing out that the majority's reasoning (which mirrored the

reasoning in the other cases mentioned above) essentially nullified the holding of *Free Enterprise Fund*. *See* 824 F. 3d at 292 (Droney, J., dissenting).

Third, these courts understated—to the point of ignoring—the harm of having to litigate before an unconstitutional ALJ. The courts treated that harm as a matter of expense and time or as an "abstract" injury. *See Tilton*, 824 F.3d 286-87; *Bennett*, 844 F.3d at 184-85; *Bebo*, 799 F.3d at 775; *Hill*, 825 F.3d at 1246-47. *Lucia* makes clear, however, that the issue is not a mere matter of cost, but an issue of constitutional *right*. *See* 138 S. Ct. at 2055 ("This Court has held that 'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief.") (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)). Under *Lucia* and *Free Enterprise Fund*, there is nothing "abstract" about Ms. Cochran's claim and therefore her constitutional injury. *See also Tilton*, 824 F.3d at 298 (Droney J., dissenting) (stating that review cannot be meaningful if "by the time that [plaintiffs] access any judicial review, the proceedings will be complete, rendering the possibility of obtaining an injunction moot, even if the final Commission order is vacated").

## CONCLUSION

*Lucia* establishes that Ms. Cochran is entitled to a hearing before a constitutionally-appointed and authorized ALJ. *Free Enterprise Fund* shows that her enforcement proceeding will not meet that standard. As a result, she meets the requirements for a preliminary injunction. The jurisdictional question in this case is whether Congress intended individuals in Ms. Cochran's position to have to litigate their constitutional challenges to the authority of ALJs before the very ALJs who lack the constitutional authority to hear their claims. Under *Free Enterprise Fund* and common canons of statutory interpretation, the answer is no. This Court's jurisdiction is therefore well established. This Court is the only proper forum in which to litigate

the threshold constitutional question at the heart of the SEC's effort to drag Ms. Cochran through another unconstitutional enforcement proceeding.

Dated: February 8, 2019

By: _____
Steven M. Simpson

Steven M. Simpson, DC Bar No. 462553*
Margaret A. Little, CT Bar No. 303494*
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
Telephone: 202-869-5210
Fax: 202-869-5238
Email: steve.simpson@ncla.legal
Email: peggy.little@ncla.legal
*Admitted *pro hac vice*

Karen Cook (TX Bar No. 12696860)
Karen Cook, PLLC
1717 McKinney Avenue
Suite 700
Dallas, TX 75202
Telephone: 214-593-6429
Fax: 214-593-6410
Email: karen@karencooklaw.com

*Attorneys for Plaintiff Michelle Cochran*